IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

**ANDREA HUDSON**                                                                                                       **Plaintiff**

**v.**                                                                        **No. 3:23-cv-214-MPM-JMV**

**NORTHWEST MISSISSIPPI COMMUNITY COLLEGE**                            **Defendant**

## MEMORANDUM OPINION

This is an employment discrimination case. This matter comes before the Court on Defendant Northwest Mississippi Community College's ("NWMCC") Motion for Summary Judgment [34] under Fed. R. Civ. P. 56. The motion was filed in response to Plaintiff Andrea Hudson's Complaint [1] for employment discrimination based on her race and retaliation pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII") and 42 U.S.C. § 1981. The Court, having reviewed the record and carefully considered the applicable law, is now prepared to rule.

## FACTUAL BACKGROUND

Ms. Hudson, a black female, worked as a cosmetology instructor for Northwest Mississippi Community College. Ms. Hudson was hired in July of 2021 and terminated 10 months later in May of 2022 because she did not satisfy the terms of her probationary period, according to NWMCC.

When Ms. Hudson was hired in July of 2021, she worked alongside April Shappley, a white female and the lead cosmetology instructor at the Senatobia campus. The two did not establish a strong working relationship, and Ms. Hudson received little training or guidance from Ms. Shappley. After just three months, Ms. Hudson filed a grievance with the department regarding Ms. Shappley's standoffish behavior and unwillingness to work together as a team. Ms. Hudson claims Ms. Shappley conveyed her disdain by undermining any disciplinary measures Ms. Hudson

imposed on students. Ms. Hudson felt like she was "fighting unfairness and very little cooperation." In response, NWMCC transferred Ms. Shappley to the Oxford campus.

In December of 2021, Lori Lawson, a white female, was hired to replace Ms. Shappley as the head instructor of the cosmetology department, despite Ms. Hudson's longer history with the department. The working relationship between Ms. Hudson and Ms. Lawson was not an improvement. Ms. Hudson soon felt like their supervisor Dwayne Casey, a white male, favored Ms. Lawson. According to Ms. Hudson, Mr. Casey became increasingly unresponsive to her emails over time, eventually ceasing to reply altogether, and excluded her from meetings. Additionally, Ms. Hudson claims that Ms. Lawson favored the white students by giving them special privileges, while she would direct the black students to Ms. Hudson with their questions or concerns.

On April 14, 2022, Ms. Hudson emailed Dr. Matthew Domas, NWMCC Vice President of Instruction, complaining about Mr. Casey's behavior toward her and the unequal treatment she was experiencing compared to Ms. Lawson, and requesting help and guidance. Dr. Domas advised Mr. Hudson to improve her communication with her white colleagues. Then, on May 13, 2022, Ms. Hudson received a non-renewal letter stating that she had not satisfied the terms of her probationary period. NWMCC reasoned that Ms. Hudson was not renewed for her position because she improperly handled a student's dismissal from the program and violated the student's privacy rights. Ms. Hudson claims her termination was racially motivated and NWMCC's justification was pretextual.

**STANDARD OF REVIEW**

This Court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. "A genuine issue of material fact exists when the evidence is such that a reasonable jury

could return a verdict for the non-movant." *Abarca v. Metro. Transit Auth.*, 404 F.3d 938, 940 (5th Cir. 2005) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)). To overcome summary judgment, the non-movant must go beyond the pleadings, and by her own affidavits, depositions, answers to interrogatories, and admissions on file, provide specific facts demonstrating a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Abarca v. Metro. Transit Auth.*, 404 F.3d 938, 940 (5th Cir. 2005). The Court shall view the evidence in the light most favorable to the non-movant. *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997). "If the non-movant sets forth specific facts in support of allegations essential to her claim, a genuine issue of material fact is presented, and summary judgment is inappropriate." *Id.* (citing *Bros. v. Klevenhagen*, 28 F.3d 452, 455 (5th Cir. 1994)).

**DISCUSSION**

Ms. Hudson alleges she was terminated from her employment with NWMCC because of her race and retaliation for engaging in a protected activity under Title VII and 42 U.S.C. § 1981. NWMCC argues that Ms. Hudson was discharged for the mishandling of a student within the program and violating that student's privacy rights. Ms. Hudson claims NWMCC's reasoning is pretextual, and her race was a motivating factor behind her termination.

I.   *Title VII claim*

A plaintiff may prove a claim of intentional discrimination or retaliation either by direct or circumstantial evidence. *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007). Where the plaintiff offers only circumstantial evidence, the court shall apply the burden-shifting framework established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). Under this framework, the plaintiff carries the initial burden to establish a prima facie case of discrimination by showing that he or she "(1) is a member of a protected group; (2) was qualified for the position

at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group." *Fahim v. Marriott Hotel Servs., Inc.*, 551 F.3d 344, 350 (5th Cir. 2008) (citing *Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 405 (5th Cir. 2005)). Once the plaintiff has met this initial burden, the burden then shifts to the defendant "to articulate some legitimate, nondiscriminatory reason" for its action. *McDonnell Douglas*, 411 U.S. at 802. If the defendant does so, the burden shifts back to the plaintiff to prove the reason is pretextual. *Ross v. Judson Indep. Sch. Dist.*, 993 F.3d 315, 321 (5th Cir. 2021) (citing *McDonnell Douglas*, 411 U.S. at 804). "A plaintiff may establish pretext by showing that a discriminatory motive more likely motivated her employer's decision, such as through evidence of disparate treatment, or that her employer's explanation is unworthy of credence." *Haire v. Bd. of Supervisors of La. State Univ. Agric. & Mech. Coll.*, 719 F.3d 356, 363 (5th Cir. 2013).

It is undisputed that Ms. Hudson is a member of a protected class, she was qualified for her position at NWMCC, and she experienced an adverse employment action. Rather, NWMCC argues that Ms. Hudson's extensive accounting of disparate treatment when compared to her white colleagues are merely self-serving statements. This Court disagrees.

At the outset, the Court stresses that the facts stated herein are viewed in the light most favorable to the non-moving party. It appears Ms. Hudson maintained a thorough accounting of the unequal and seemingly unwarranted treatment she experienced when compared to her white colleagues. Ms. Hudson filed grievances with NWMCC, sought guidance from supervisors, and attempted to address the tension within the program head on, but the issues remained unresolved. For instance, this Court finds it inappropriate that Ms. Hudson was discharged for discussing a student's dismissal from the program with a family member, while Ms. Lawson received no

4

reprimand for allowing her students to undress in the classroom and perform spray tans and Brazilian waxes on one another, apparently in violation of the cosmetology program's policy and curriculum. This treatment seems grossly disproportionate, and Ms. Hudson need not explicitly spell out "racial discrimination" to determine unequal treatment.

The legitimate, nondiscriminatory reasoning behind Ms. Hudson's termination is unconvincing to this Court. NWMCC claims that Ms. Hudson was terminated for her improper handling of a student who was dismissed from the program and for violating the student's privacy rights.

> Ms. Hudson did not follow directions of her supervisor regarding JB which were a matter of campus safety, and Ms. Hudson violated the privacy rights of JB at the time of the student's removal from the program. Collectively, these events gave rise to the need to dismiss Ms. Hudson from her employment with NWMCC.

Def.'s Mem. Supp. Mot. Summ. J. [35] In support of pretext, Ms. Hudson claims to have no knowledge regarding how to handle JB, the student who was discharged from the program. NWMCC asserts that Ms. Hudson violated the Waiver of Rights to Privacy of Records by sharing confidential information with an individual not listed on JB's forms. The video evidence shows Ms. Hudson explaining to JB's aunt, the family member who arrived to pick up JB from the school that morning, how to contact Mr. Casey about her niece's removal from the program, upon the aunt's request. NWMCC's reasoning appears to be a classic example of straining at a gnat.

While it is not the position of the Court to act as an employer in deciding appropriate repercussions for Ms. Hudson's alleged violations, it seems unreasonable to terminate Ms. Hudson without any warning or even a minimal reprimand. This Court, having considered the video evidence of NWMCC's reasons for Ms. Hudson's termination, finds the defenses to be overstated and pretextual. Upon consideration of the remaining video evidence, it appears that, sadly, there were racial issues present on campus, affecting both faculty and students. This leads the Court to

believe that there is a genuine issue regarding the true reason for Ms. Hudson's termination. Ms. Hudson has gone far beyond the pleadings to provide specific evidence demonstrating a genuine issue of material fact for trial.

  II.     Retaliation claim

The antiretaliation provision of Title VII "prohibits an employer from 'discriminat[ing] against' an employee or job applicant because that individual 'opposed any practice' made unlawful by Title VII or 'made a charge, testified, assisted, or participated in' a Title VII proceeding or investigation." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 56 (2006) (alteration in original) (quoting 42 U.S.C. § 2000e-3(a)). Where a retaliation claim is based on circumstantial evidence, the McDonnell Douglas framework applies, and the plaintiff must prove that "(1) she engaged in a protected activity; (2) she 'suffered an adverse employment action'; and (3) 'a causal connection exists between the protected activity and the adverse employment action.'" *Brown v. Wal-Mart Stores E., L.P.*, 969 F.3d 571, 577 (5th Cir. 2020), *as revised* (Aug. 14, 2020) (quoting *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 427 (5th Cir. 2000)). An employee has engaged in a protected activity if she has "opposed any practice made an unlawful employment practice under [42 U.S.C. § 2000e-3(a)]." 42 U.S.C. § 2000e-3(a). "'An unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C.A. § 2000e-2(m). "To satisfy the opposition requirement, a plaintiff need only show that he had a 'reasonable belief that the employer was engaged in unlawful employment practices.'" *Bruno v. RIH Acquisitions MS I, LLC*, 530 F. Supp. 2d 819, 821 (N.D. Miss. 2008) (quoting *Turner v. Baylor Richardson Med. Ctr.,* 476 F.3d 337, 349 (5th Cir. 2007)).

Once the plaintiff has established a prima facie case of retaliation, the defendant will then have an opportunity to provide a legitimate, nondiscriminatory reason for the adverse employment action. *Byers*, 209 F.3d at 427. Finally, the burden rests with the plaintiff to show that the defendant's explanation is a pretext for unlawful retaliation. *Id*. "A plaintiff may establish pretext by showing that a discriminatory motive more likely motivated her employer's decision, such as through evidence of disparate treatment, or that her employer's explanation is unworthy of credence." *Haire v. Bd. of Supervisors of La. State Univ. Agric. & Mech. Coll.*, 719 F.3d 356, 363 (5th Cir. 2013).

NWMCC argues that Ms. Hudson did not engage in a protected activity when she reported racial discrimination to Dr. Domas. While Mr. Casey's actions, such as disregarding Ms. Hudson's emails and excluding her from meetings, may not explicitly qualify as unlawful employment practices, when considered collectively, this Court is of the opinion that Mr. Casey's improper work behavior reasonably constitutes intentional discrimination. Ms. Hudson opposed this disparate treatment as demonstrated in her email to Dr. Domas where she states, "[t]his may be harsh to say but I feel like I am being discriminated against as opposed to the other instructor (Ms. Lawson)." Ms. Hudson proceeded to provide examples of the unequal treatment she faced compared to her white colleague and continued to request support and guidance. Rather than addressing Mr. Casey directly about his unusual behavior toward Ms. Hudson, Dr. Domas advised Ms. Hudson to improve her communication with her white colleagues. As this Court previously stated in *Bruno*, "[t]he prohibition of retaliation protects employees who use informal methods to voice their complaints" which may include "making complaints to management." *Bruno*, 530 F. Supp. 2d at 821 (quoting *Alack v. Beau Rivage Resorts, Inc.,* 286 F.Supp.2d 771, 774 (S.D. Miss. 2003)). And an employee's statement must oppose a specific practice of the employer. *Id*. Ms.

7

Hudson's email to Dr. Domas articulating specific examples of the unequal treatment she experienced was unmistakably clear and supports a conclusion that she engaged in a protected activity.

As Ms. Hudson points out, "at the prima facie [stage], a plaintiff can meet his burden of causation simply by showing close enough timing between his protected activity and his adverse employment action." *Garcia v. Pro. Cont. Servs., Inc.*, 938 F.3d 236, 243 (5th Cir. 2019) (holding that a period of two and a half months was efficient to establish causation). According to Ms. Hudson, her protected activity and adverse employment action occurred within one month of each other; she emailed Dr. Domas on April 14, 2022, and was terminated on May 13, 2022. Accordingly, the Court finds that a causal connection exists between Ms. Hudson's protected activity and her adverse employment action, thereby establishing her prima facie case of retaliation.

At the summary judgment stage, the Court is required to view the facts in the light most favorable to Ms. Hudson, as the non-moving party. Accordingly, this Court is unpersuaded by NWMCC's reasoning behind Ms. Hudson's termination. The Court finds that the evidence presented by Ms. Hudson creates a genuine issue of material fact, and a juror might reasonably believe it constitutes racial discrimination in the workplace.

## CONCLUSION

For the reasons stated above,

**IT IS, THEREFORE, ORDERED** that Defendant's Motion for Summary Judgment [34] is **DENIED** as Plaintiff has presented a genuine issue of material fact for trial.

SO ORDERED this 17th day of December, 2024.

    /s/Michael P. Mills
UNITED STATES DISTRICT JUDGE
NORTHERN DISTRICT OF MISSISSIPPI